IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN SPANO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 20-1806 |
| vs. | ) |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

ORDER

AND NOW, this 18th day of July 2022, the Court, having considered the parties' summary judgment motions, will order judgment in Defendant's favor.[1] The agency's final decision wherein the Administrative Law Judge ("ALJ") denied Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.* is supported by substantial evidence. Accordingly, it will be affirmed. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)).[2]

---

[1] Defendant requests not only judgment in her favor, but also that costs be taxed against Plaintiff; however, the latter request is not supported by argument in her accompanying brief. Accordingly, the Court's Order excludes an award of costs. *See Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996) (explaining that "conclusory assertions" fail to raise issues).

[2] Plaintiff argues that the ALJ's decision finding him to be not disabled is unsupported by substantial evidence because the ALJ erred in evaluating his subjective complaints and the medical opinion evidence. Plaintiff also argues that the ALJ failed to accurately convey his limitations to the vocational expert ("VE") who testified at his hearing and therefore erred in relying on the VE's testimony. The Court finds Plaintiff's arguments unpersuasive and will affirm the ALJ's decision denying Plaintiff's DIB application.

An ALJ's decision is reviewed to determine whether the ALJ "applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the [ALJ's] findings of fact." *Sweeney v. Comm'r of Soc. Sec.*, 847 F. Supp. 2d 797, 799 (W.D. Pa. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). The standard of review does not allow the reviewing court to "weigh the evidence or substitute

its conclusions for those of the fact-finder." *Holley v. Colvin*, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 Fed. Appx. 167 (3d Cir. 2014) (citing *Williams*, 970 F.2d at 1182). "The presence of evidence in the record that supports a contrary conclusion" does not permit setting aside the ALJ's decision when "the record provides substantial support for that decision." *Id.* (citing *Sassone v. Comm'r of Soc. Sec.*, 165 Fed. Appx. 954, 955 (3d Cir. 2006)).

ALJs use a five-step evaluation to assess disability. 20 C.F.R. § 404.1520. At step one, the ALJ must ask "whether the claimant is currently engaging in substantial gainful activity." *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 492 (W.D. Pa. 2005) (citing *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999); 20 C.F.R. § 404.1520(a)). As long as the answer is no, the ALJ moves to step two where he or she "must determine whether the claimant is suffering from a severe impairment." *Id.* (citations omitted). The claimant must have one severe impairment or combination of impairments that is severe to continue to step three. *Id.* (citations omitted). At step three, the ALJ "compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work." *Id.* (citations omitted). If the claimant fails to prove disability at step three, he can still prove disability at step four. *Id.* (citations omitted). "Step four requires the ALJ to consider whether the claimant retains the residual functional capacity [("RFC")] to perform [his] past relevant work." *Id.* (citations omitted). If the claimant cannot return to past relevant work, the "evaluation moves to the final step" where the ALJ "must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability." *Id.* (citations omitted). That is, the "ALJ must show there are other jobs existing in significant numbers in the national economy . . . consistent with [the claimant's] medical impairments, age, education, past work experience, and [RFC]." *Id.* (citations omitted).

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ erroneously discounted his subjective complaints and improperly rejected medical opinion evidence. A claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The finding must be based on all the relevant evidence. *Id.* ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). When ALJs consider a claimant's subjective complaints, they use a two-step evaluation process. *Id.* § 404.1529(a); SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). The first step is to determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *3. Once the claimant has proven the existence of such an underlying impairment, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine" their limiting effect. *Id.* When ALJs consider medical opinion evidence, they must determine the persuasiveness of such opinions according to 20 C.F.R. § 404.1520c (explaining how ALJs evaluate medical opinion evidence for applications filed on or after March 27, 2017). Five factors are relevant to persuasiveness: "[s]upportability," "[c]onsistency," "[r]elationship with the claimant," "[s]pecialization," and "[o]ther factors." *Id.* § 404.1520c(b)—(c). The two most important factors are supportability and consistency. *Id.*

---

§ 404.1520c(b)(2). Though a medical opinion may have significant persuasive value, ALJs do not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(a).

To Plaintiff's charge that the ALJ erroneously discounted his subjective complaints, the Court finds no error. The ALJ employed the two-step process to consider Plaintiff's alleged symptoms and limitations. She considered Plaintiff's representation that he had difficulty with, among other things, "lifting, squatting, bending, standing, reaching, walking, sitting, [and] kneeling" due to his impairments, such as degenerative joint disease of the right hip, degenerative disc disease of the lumbar spine, and degenerative joint disease of the hands and knees. (R. 18). Having acknowledged Plaintiff's representation of his symptoms and limitations, the ALJ considered whether his complaints were borne out by the objective evidence. She ultimately determined Plaintiff was not as limited as he alleged and explained that "objective studies" showed only "mild to moderate abnormalities" that were not indicative of "disabling functional limitations." (R. 19). For example, 2018 X-rays of Plaintiff's knees showed that though Plaintiff had degenerative joint disease, he had "normal alignment and maintained joint spaces." (*Id.*). Plaintiff's treatment over the years confirmed "the presence of genuine pain," but also evidence of improvement of pain and functioning with treatment. (R. 20). The ALJ considered this and other seemingly divergent evidence, *e.g.*, evidence of Plaintiff's "bilateral knee crepitus" and examination evidence showing "no acute distress" and "normal knee stability and alignment." (*Id.*). She also considered Plaintiff's daily activities— such as walking three days weekly for exercise (R. 21)—which indicated a not insignificant degree of mobility. This evidence led the ALJ to conclude that Plaintiff's impairments could cause his alleged symptoms but not at the intensity Plaintiff alleged. (R. 19).

The Court finds this explanation to be adequate despite Plaintiff's complaints that the ALJ overemphasized his responsiveness to treatment and daily activities and insufficiently acknowledged how his work history bolstered his believability. Responsiveness to treatment and daily activities are both relevant to an ALJ's evaluation of alleged symptoms, SSR 16-3P, 2017 WL 5180304, at *7—8, and the Court does not discern any overemphasis of either in this case. This is not a case where the ALJ relied on that evidence even though it was "overwhelmed by other evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Nor did the ALJ highlight a few sporadic activities to justify her rejection of evidence proving disability. *See Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."). Further, the Court does not agree with Plaintiff that the ALJ erred in failing to explicitly consider his thirty-year work history in assessing his subjective complaints. When ALJs evaluate a claimant's subjective complaints, they are not making a judgment regarding the claimant's veracity, SSR 16-3p, 2017 WL 5180304, at *2; therefore, it was not essential for the ALJ to address evidence of Plaintiff's work history insofar as it reflected his truthfulness. Overall, the ALJ's consideration of Plaintiff's subjective complaints is clear and well-supported, thus, the Court will not substitute its own weighing of that evidence. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). *See Sanborn v. Comm'r of Soc. Sec.*, 613 Fed. Appx. 171, 177

(3d Cir. 2015) (rejecting a similar argument where "the ALJ's credibility determination was based on a broad view of the record and would have been supported by substantial evidence regardless of whether the ALJ had explicitly considered [the claimant's] employment history.").

The Court is similarly unpersuaded that the ALJ erred in her consideration of the medical opinion evidence. Plaintiff argues that the ALJ rejected the knee impairment questionnaire (hereinafter "questionnaire") purportedly authored by orthopedic surgeon Dr. Ari Pressman without complying with the regulatory framework for evaluating medical opinion evidence. The Court, however, finds that the ALJ rejected the opinion by evaluating its persuasiveness consistent with 20 C.F.R. § 404.1520c. The ALJ addressed the questionnaire and found it was "not persuasive" for "several" independent reasons. (R. 23). First, she explained the opinion was unpersuasive because it was "undated and the signature [was] illegible." (*Id.*). Next, she explained that the opinion was not persuasive because it was a mere check-box form that lacked supporting explanations for the limitations articulated therein. (*Id.*). She also addressed consistency, explaining that the restrictions opined on the questionnaire—limiting Plaintiff to less than sedentary work and speculating that Plaintiff would miss more than three days of work every month—were inconsistent with the rest of the record which showed "mostly intact strength, reports that the claimant walks for exercise, and improvement [in] the claimant's overall pain and functionality with appropriate treatment, as detailed fully above." (*Id.*). From this explanation, it is clear the ALJ considered supportability and consistency, *i.e.*, the two factors she was required to consider. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff contends that the ALJ's evaluation of the opinion was clouded by her doubts concerning its authorship and argues that the ALJ should have developed the record to resolve that uncertainty instead of allowing the illegibility of the signature to affect her consideration of the opinion's persuasive force. Plaintiff also argues that the ALJ mischaracterized the opinion in finding it lacked supporting explanations and argues that the ALJ overlooked significant corroborating evidence in the record when she found the opinion to be inconsistent with the record. For instance, Plaintiff argues that the ALJ overlooked evidence showing degenerative changes in his knees, his use of a cane to ambulate, and lost muscle strength. Relatedly, Plaintiff argues that the ALJ should not have valued the non-examining State agency consultant's opinion more than the questionnaire because the State's consultant did not have evidence from the entire relevant period and did not treat Plaintiff.

These protestations fail to convince the Court that the ALJ erred in her evaluation of the questionnaire. Nothing prohibited the ALJ from commenting on the legibility, or lack thereof, of the signature on the questionnaire. ALJs consider the relationship between a treating source and claimant as well as the source's specialization when they evaluate the persuasiveness of medical opinion evidence, *id.* § 404.1520c(c)(3)—(4), but they are not required to address those factors in their decisions. *Id.* § 404.1520c(b)(2). Moreover, the ALJ in this case offered several other reasons why she found the questionnaire not persuasive, and her reasons are not unsound. The ALJ found that the questionnaire was a check-box form that lacked explanations. (R. 23). Plaintiff counters that Dr. Pressman "stated that his opinions were based on objective imaging in

the form of x-rays revealing progressive degenerative joint disease as well as clinical evidence of pain and decreased range of motion and chronic residuals of severe painful motion or weakness in the knee." (Doc. No. 19, pg. 18).  However, having reviewed the evidence in question, the Court is assured that the ALJ's supportability finding regarding the questionnaire was reasonable.  Plaintiff points to explanations on the first page of a five-page form where the author responded to prompts for Plaintiff's diagnoses, prognosis, test results that demonstrate the diagnosis, and primary symptoms.  (R. 531).  The author's opinions that Plaintiff would be frequently absent from work and incapable of gainful employment because of his knees appear later on the form and are not accompanied by supporting explanations.  (R. 534—35).  To describe the opinions on the questionnaire as being supported by a "detailed explanation" in "narrative form," (Doc. No. 19, pg. 18) is somewhat dubious.

      The Court is likewise unconvinced that the ALJ ignored evidence that supported the questionnaire's limitations.  Plaintiff points to evidence in the record that the ALJ might have relied upon to find the questionnaire persuasive.  However, the mere presence of evidence in the record that could support a different conclusion does not undermine an ALJ's findings as long as the ALJ's findings are supported by substantial evidence.  *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009).  The ALJ found that the questionnaire was inconsistent with the entire record, but she acknowledged evidence that conflicted with that conclusion, *e.g.*, she noted evidence indicating strength deficits upon examination, though she ultimately found Plaintiff's strength was usually normal.  (R. 20).  Where the ALJ acknowledged conflicting evidence but supported and explained her conclusion, the Court finds no error.

      Plaintiff has also argued that the ALJ erred insofar as she found the State agency consultant's opinion to be more persuasive than the questionnaire, particularly because the questionnaire appeared to have been authored by a treating source.  However, Plaintiff's application was filed on or after March 27, 2017, and this Court has explained that claimants subject to the new regulations for medical opinion evidence should not rely on the "treating physician rule." *Koshir v. Kijakazi*, No. CV 20-1441, 2022 WL 992529, at *3 n.2 (W.D. Pa. Mar. 31, 2022).  It is clear that the ALJ in this case assessed all the medical opinions as the new regulations instructed, that is, she determined their persuasive value without affording any opinion "specific evidentiary weight, including controlling weight."  20 C.F.R. § 404.1520c(a).  She determined that the State agency consultant's opinion was "not fully persuasive" because some evidence supported further limitations despite the opinion's general consistency with the record.  (R. 23).  Using this and the other evidence, the ALJ formulated the RFC.  Plaintiff suggests the ALJ relied on her own lay interpretation of medical data to do so because she did not fully accept medical opinion evidence.  However, this argument reflects a common misunderstanding of *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986).  This Court has explained that *Doak* does not demand that an ALJ's disability determination be premised upon a physician's findings.  *Doty v. Colvin*, No. CIV.A. 13-80-J, 2014 WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014) (citations omitted); *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015) ("[R]eliance on *Doak* and the other cases cited in his brief for the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided.").  The ALJ is solely

responsible for crafting an appropriate RFC based on all the relevant evidence. 20 C.F.R. § 404.1546(c). The want of an agreeing physician does not undermine a well-supported and explained RFC determination.

Plaintiff's final argument is that the ALJ erred in relying on the VE's testimony about the jobs that would be available to Plaintiff because she left some of his limitations out of the hypothetical question that she presented to the VE to elicit that testimony. The information an ALJ presents to the VE to ascertain information about job availability must reflect all the claimant's "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005). Thus, it is often the case that arguments about what limitations were presented to the VE are really arguments about whether the ALJ should have included additional limitations in the RFC. *Id.* Accordingly, the Court herein addresses Plaintiff's argument as it would a challenge to the RFC determination. Plaintiff argues that because the ALJ found that he had moderate difficulties in his ability to concentrate, persist, or maintain pace at step-three of the five-step evaluation, the ALJ should have included more mental limitations in the RFC. The ALJ limited Plaintiff to "carry[ing] out detailed but uninvolved written or oral instructions and tasks that can be learned in one month or less" (R. 18), but Plaintiff argues that did not fully accommodate the moderate concentration limitation. Plaintiff argues his case is like *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004) wherein the United States Court of Appeals for the Third Circuit decided that limitation to "simple tasks" with restricted travel and phone privileges did not fully accommodate the ALJ's finding that the claimant "*often* suffered from deficiencies in concentration, persistence, or pace." *Id.* at 554.

Plaintiff has acknowledged that the rule at work in *Ramirez* is not that a moderate concentration impairment demands a specific corresponding functional limitation in the RFC, but that the ALJ must provide a "valid explanation" for how he or she formulated the RFC. *Id.* at 555. The Court finds that the ALJ in this case provided such an explanation. After reviewing evidence relevant to Plaintiff's mental limitations, the ALJ found that his mental impairments were "not disabling." (R. 23). Plaintiff's 2019 cognitive screening showed some decline in "attention, working memory, and executive function skills." (R. 22). However, at that time Plaintiff also exhibited normal comprehension, learning, and memory. (*Id.*). Many of Plaintiff's mental status findings were unremarkable, and Plaintiff was able to drive, watch television, and cook. (R. 22—23). To the ALJ, this demonstrated Plaintiff could do simple work. (*Id.*). Accordingly, the ALJ limited him to carrying out only detailed but uninvolved instructions and learning tasks that could be learned in no more than a month. (R. 18).

Based on these limitations, the VE testified about the unskilled work (SVP 2) that would be appropriate. (R. 82). The courts have found there is "no inherent inconsistency between" finding that a claimant can "perform simple, routine tasks at reasoning level 2" and a finding that the claimant had "moderate difficulties in maintaining concentration, persistence and pace." *Shoemaker v. Colvin*, No. 3:16-CV-2304, 2018 WL 3245011, at *11 (M.D. Pa. Apr. 5, 2018), *report and recommendation adopted sub nom. Shoemaker v. Berryhill*, No. 3:16-CV-2304, 2018 WL 3239903 (M.D. Pa. July 3, 2018). There is no requirement that an ALJ include his or her

6

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 18) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 21) is GRANTED as specified above.

                                                                  s/ Alan N. Bloch
                                                          United States District Judge

ecf:    Counsel of Record

---

step-three moderate concentration limitation finding in the RFC as a limitation. As the ALJ noted, the mental limitations findings at step three are separate from the RFC determination. (R. 17). The mental limitations the ALJ included in the RFC were supported by a thorough review of the evidence and the ALJ explained why she found further limitations were unnecessary. (R. 23). Thus, the ALJ's explanation of her decision has demonstrated to the Court "how well the ALJ studied the record, and how thoroughly [s]he understood [Plaintiff's] specific impairments (or lack thereof) before making [her] decisions about [his] residual functional capacity, and ultimately, [his] disability claim." *Holley*, 590 Fed. Appx. at 168. For this and the foregoing reasons, the Court will affirm the ALJ's decision.